IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-61088

CHRISTOPHER TAYLOR, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

ACQUINITY INTERACTIVE, LLC, a Delaware limited liability company, and MODERNAD MEDIA LLC, a Florida limited liability company,

*Defendants*.

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Christopher Taylor brings this class action complaint against Defendants Acquinity Interactive LLC and ModernAd Media LLC (collectively "Defendants") to stop Defendants' practice of making unsolicited text message calls to cellular telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendants act cooperatively to make unsolicited spam text message calls for the purpose of "co-registration" lead generation. To that end, Defendants make, or have made on their behalf, text message calls informing the recipient that they were chosen to receive "a free Starbucks drink" as part of "Starbucks customer appreciation." These inducements are, of course, false, and only meant to push consumers to Defendants' information collection website.

1

2. Defendants repeatedly made (or directed to be made on their behalf) unsolicited text message calls to Plaintiff's and putative Class member's cellular telephones in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

3. Neither Plaintiff Taylor, nor the other members of the proposed Class, ever provided their cellular telephone numbers to Defendants for any purpose, let alone consented to have Defendants make text message calls to their phones.

4. By making the text message calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text message calls, and the monies paid to their wireless carriers for the receipt of such text message calls.

5. In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited text message calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff Christopher Taylor is a natural person and citizen of the State of Indiana.

7. Defendant Acquinity Interactive LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 2200 SW 10th St, Deerfield Beach, Florida, 33442. Defendant ModernAd Media is the direct predecessor of Defendant Acquinity Interactive. Defendant Acquinity Interactive was created in 2011 through an asset sale from ModernAd Media to a consortium of ModernAd Media executives. Both Acquinity and ModernAd continue to function jointly, sharing office space, executives, employees, resources, records, databases, and intermingling funds. Acquinity

Interactive does business throughout the United States, the State of Florida and in this District.

8. ModernAd Media LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 101 N Federal Highway, Boca Raton Florida 33432. Defendant ModernAd Media is the direct predecessor of Defendant Acquinity Interactive. Defendant Acquinity Interactive was created in 2011 through an asset sale from ModernAd Media to a consortium of ModernAd Media executives.  Both Acquinity and ModernAd continue to function jointly, sharing office space, executives, employees, resources, records, databases, and intermingling funds. ModernAd Media does business throughout the United States, the State of Florida and in this District.

## JURISDICTION AND VENUE

9. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

10. The Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants transact significant amounts of business within this District and the conduct and events giving rise to Plaintiff's claims arose in substantial part in this District. Venue is additionally proper because both Defendants are headquartered here.

## COMMON FACTUAL ALLEGATIONS

11. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to transmit bulk solicitations cheaply.

12. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the

transmission and receipt of short text message calls (usually no more than 160 characters) to and from cellular telephones.

13.     SMS message calls are directed to a wireless device using the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

14.     According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—made directly to user's cell phones." In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone." Amanda Lenhart, *Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens*, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited June 17, 2012).

15.     Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because cell phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

16.     Defendants made (and/or had made on their behalf), and presently continue to make, text message calls to Plaintiff's and the Class members' cell phones without consent.[1]

---

[1] ModernAd Media is no stranger to accusations of illegal spamming activities. Prior to its "asset sale" and conversion into Acquinity Interactive, ModernAd settled with the Florida Attorney General's office for $2.9 million stemming from allegations that ModernAd violated the Federal CAN-SPAM Act.  *See* myfloridalegal.com/newsrel.nsf/newsreleases/348FA8D553BBBD0F85257719004F157E.

While Defendants attempt to shield their identity and role in sending spam text messages, Defendant Acquinity's website states that it utilizes SMS marketing:

> At AI, online marketing is all about conversion, every step of the way. Our broad knowledge base lets us take a multi-channel marketing approach across a range of industries to give you the right media mix for your product or service….AI's Multi-Channel Mix: Ecommerce, Email Marketing, Telemarketing, Display Advertising, Affiliate Marketing, ***SMS (text messaging)***, Mobile Web, Social Media….[2] (emphasis added)

17. Defendants obtained Plaintiff's and the Class members' cell phone numbers by purchasing lists of phone numbers from a third party and/or simply dialing numbers at random.

18. On or around August 8, 2012, Defendants made, or had made on their behalf, the following text message call to Plaintiff's cell phone:

> Starbucks customer appreciation! Go to http://starbucksfor.me and enter your Code: "0812" for a free Starbucks drink!

19. Defendants made, or had made on their behalf, the above text message call to Plaintiff from the phone number (316) 573-2156.

20. Clicking on starbucksfor.me links consumers directly to diningandcuisine.com. This website is owned and/or operated by Defendants, or operated by Defendants' direct subsidiaries including "Invest Your Media." Invest Your Media is held out as a corporate entity located in England, but, on information and belief, is nothing more than a name utilized by Defendants to shield their actual role in sending and profiting from spam text messages. On information and belief, starbucksfor.me is directly operated by or on behalf of Defendants.

21. Consumers also received a similar "Starbucks" message from multiple telephone numbers, including: (480) 319-3286, (512) 221-6526, (918) 688-4976, (480) 213-7340, (213) 448-6906, and (213) 479-3171.

---

[2] *See* http://www.acquinity.com/whatwedo.html

22. Other related subsidiaries or divisions of Defendants that take part in the making of the text message calls at issue in this Complaint, or are responsible for the operation of the websites consumers are directed to, include "Faraji E-Consulting" and "Revenue Path E-Consulting Private Limited."

23. Defendants made, or had made on their behalf, the text message calls to Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

24. Plaintiff did not submit his phone number to Defendants or any entity that indicated that he would receive text messages from Defendants, let alone text message calls promoting free drinks or Starbucks products.

25. Plaintiff never consented to, requested, or otherwise desired or permitted Defendants to make text message calls to his cellular phone, nor did Plaintiff provide Defendants with his cellular telephone number.

26. Defendants made, or had made on their behalf, the same (or substantially the same) text message call *en masse* to a list of cellular telephone numbers or randomly generated phone numbers.

27. Defendants, or third parties acting directly on their behalf, utilize third party domain registration companies to mask from public view the true owner and operator of the websites featured in their text message calls as well as the websites those text messages lead a consumer to, all in order to avoid detection and liability for their conduct.

28. Defendants each were aware that the above-described text message calls were being made either by them directly, or made on their behalf, and that the text message calls were being transmitted to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

29.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class (the "Class") defined as follows:

> All individuals in the United States who received the following text message on their cellular telephone:
>
> Starbucks customer appreciation! Go to http://starbucksfor.me and enter your Code: "0812" for a free Starbucks drink!

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

30.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made text message calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

31.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited text message calls.

32.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

7

33. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendants' conduct constitutes a violation of the TCPA;

    (b)    whether the equipment Defendants used to make the text message calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    (c)    whether Defendants systematically made text message calls to persons who did not previously provide Defendants with their prior express consent to receive such text message calls;

    (d)    whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct.

34. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

35. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

36. Defendants and their agents made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

37. Defendants made the text message calls, or had them made on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

38. Defendants and their agents utilized equipment that made, or had made on their behalf, the text message calls to Plaintiff and other members of the Class simultaneously and without human intervention.

39. By making, or having made on their behalf, the unsolicited text message calls to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii).

40. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

41. Should the Court determine that Defendants' conduct was willful and knowing,

9

the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Taylor, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Christopher Taylor as the representative of the Class, and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited text message calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  May 13, 2013

**CHRISTOPHER TAYLOR**, individually and on behalf of all others similarly situated,

By: /s/Stefan Coleman
      One of Plaintiff's Attorneys

Stefan Coleman, Esq. (#30188)
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S. Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: (877) 333-9427
law@stefancoleman.com

Jay Edelson, Esq.
Rafey S. Balabanian, Esq.
Ari J. Scharg, Esq.
Christopher L. Dore, Esq.

Benjamin S. Thomassen, Esq.*
EDELSON LLC
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
cdore@edelson.com
bthomassen@edelson.com

\* *Pro hac vice* admission to be sought